**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| DOUGLAS WALGREN, Individually and as Independent Administrator of the Estate of COREY WALGREN, et al.,   )<br>)<br>)<br>)<br>Plaintiffs,   )<br>)<br>v.   )<br>)<br>BRETT HEUN, et al.,   )<br>)<br>Defendants.   ) | No. 17-cv-04036<br><br>Judge Andrea R. Wood |

## MEMORANDUM OPINION AND ORDER

On January 11, 2017, Corey Walgren ("Walgren"), a promising young student at Naperville North High School ("Naperville North") tragically took his own life. Prior to his death, Walgren had been aggressively questioned by two Naperville North Deans, Defendants James Konrad and Stephen Madden, and a police detective, Defendant Brett Heun, who were investigating an allegation that Walgren was involved in criminal conduct. Now Walgren's parents, Douglas Walgren, individually and as independent administrator of Corey Walgren's estate, and Maureen Walgren (together, "Plaintiffs") have sued Konrad, Madden, Heun, City of Naperville, and Naperville Community Unit School District #203 for various alleged federal and state law violations in connection with the interrogation that preceded their son's untimely death. Before the Court are two motions to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6): one filed by Heun and City of Naperville (Dkt. No. 30), and the other by Madden, Konrad, and Naperville Community Unit School District #203 (Dkt. No. 35). For the reasons that follow, the motions are granted.

# BACKGROUND

For purposes of deciding the motions to dismiss, the Court accepts the well-pleaded facts in the amended complaint as true and views them in the light most favorable to Plaintiffs. *See, e.g.*, *Anicich v. Home Depot USA, Inc.*, 852 F.3d 643, 648 (7th Cir. 2017).

At all times relevant to this action, Corey Walgren was a sixteen-year-old junior at Naperville North, where he was on the Honor Roll and had no history of discipline. (Am. Compl. ¶ 4, Dkt. No. 25.) On January 11, 2017, Walgren was at school sitting down to eat lunch with his friends when James Konrad, a Dean of Students at Naperville North, ordered Walgren to come with him to the deans' offices. (*Id.* ¶¶ 8, 11.) Konrad escorted Walgren to an empty office, closed the door, and ordered Walgren to wait. (*Id.* ¶ 13.) Shortly thereafter, Brett Heun, a City of Naperville police detective, and Stephen Madden, another Dean of Students at Naperville North, entered the office. (*Id.* ¶¶ 6–7, 14.) Heun and Madden began interrogating Walgren regarding an allegation that Walgren had engaged in criminal misconduct. (*Id.* ¶ 14.) Prior to initiating the interrogation, nobody attempted to contact Walgren's parents, and he was not advised of his *Miranda* rights.[1] (*Id.* ¶¶ 15–18.)

In an effort to obtain information, Heun and Madden interrogated Walgren in a manner that caused him to suffer extreme psychological distress and fear. (*Id.* ¶ 19.) Specifically, they falsely accused Walgren of possessing and disseminating child pornography and warned him that he would be forced to register as a sex offender if he in fact was in possession of child pornography. (*Id.*) Fearing imprisonment and the stigma of being convicted of a sex offense,

---

[1] This, of course, is a reference to the Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny, which require that a criminal suspect be given certain warnings before being subjected to custodial interrogation. Specifically, the suspect must be advised prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Berghius v. Thompkins*, 560 U.S. 370, 380 (2010) (quoting *Miranda*, 384 U.S. at 479).

Walgren turned over his cell phone to Heun and Madden. (*Id.* ¶¶ 20–21.) The two then searched Walgren's phone but failed to find any child pornography. (*Id.* ¶ 21.) Nonetheless, Heun and Madden told Walgren that he was in possession of child pornography and that the contents of his phone could result in him having to register as a sex offender. (*Id.* ¶ 22.) They did so even though prior to the interrogation, Heun, Madden, and Konrad lacked any information that Walgren possessed or disseminated any visual depictions that could be considered child pornography or committed any offense that would require him to register as a sex offender. (*Id.* ¶ 23.)

After the interrogation concluded, Walgren was escorted to Madden's office and ordered to wait there. (*Id.* ¶ 22.) Meanwhile, Heun and Madden attempted to contact his parents. (*Id.* ¶ 24.) After attempting unsuccessfully to contact Douglas Walgren, Huen and Madden were able to reach Maureen Walgren by phone. (*Id.*) They informed Maureen that her son had possessed and disseminated child pornography and that they needed her to execute a consent form so they could further search his phone. (*Id.* ¶ 25.) Maureen told Heun and Madden that she was on her way and would be at the school in fifty minutes. (*Id.* ¶ 27.) Heun, Madden, and Konrad kept Walgren in Madden's office to await his mother's arrival. (*Id.* ¶ 28.)

As Walgren waited, he continued to suffer from extreme psychological and emotional distress brought about by his interrogation. (*Id.* ¶ 29.) Before his mother could arrive, Walgren escaped from the office and left the Naperville North grounds. (*Id.* ¶ 30.) Experiencing dire and desperate psychological conditions, he walked to the fifth level of a downtown Naperville parking garage and jumped with the intention of killing himself or causing great bodily harm. (*Id.* ¶ 31.) Later that day, Walgreen died from injuries sustained from the fall. (*Id.*)

Plaintiffs have filed the present lawsuit based on the events preceding Walgren's suicide. They name Heun, Madden, and Konrad (together, "Individual Defendants") as Defendants along

with City of Naperville and Naperville Community Unit School District #203 (together, "Municipal Defendants"), the latter of which operates and manages Naperville North. Plaintiffs assert claims against the Individual Defendants pursuant to 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments to the United States Constitution—those claims are based on unreasonable conditions of confinement, deliberate indifference to serious medical needs, state-created danger, intentional interference with the parent-child relationship, and conscience-shocking coercive interrogation. Plaintiffs also set forth the same § 1983 claims against the Municipal Defendants pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). In addition, Plaintiffs bring state law claims against the Individual Defendants for willful and wanton conduct and intentional infliction of emotional distress and seek to hold the Municipal Defendants liable for the state law violations under the doctrine of *respondeat superior*.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

## I.     Procedural Arguments

Plaintiffs raise two procedural issues before addressing the merits of Defendants' motions to dismiss. First, Plaintiffs complain that Defendants introduced facts not alleged in the amended complaint in their motions to dismiss, and therefore the Court should either convert their motions into ones for summary judgment or strike the motions so Plaintiffs may engage in discovery. Any such relief is entirely unnecessary, however. Many of what Plaintiffs refer to as "additional facts" are actually just alternative phrasings of allegations in the amended complaint. To the extent the motions to dismiss do bring in outside facts, the Court will disregard those facts and evaluate the parties' arguments based only on the well-pleaded allegations in the amended complaint. *See Macias v. Bakersfield Rest., LLC*, 54 F. Supp. 3d 922, 926–27 (N.D. Ill. 2014) ("When a party attaches documents to a motion to dismiss, the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56, or exclude the documents attached to the motion to dismiss and continue under Rule 12.").

In addition, Plaintiffs argue that Defendants Heun and City of Naperville should be sanctioned for violating the confidentiality order in place in this matter by leaking confidential information to the media and then citing a newspaper article containing the purportedly confidential information in their motion to dismiss. But Plaintiffs have no evidence showing that any Defendant was responsible for a leak. Their argument instead is supported only by conjecture, based on the claim that the article was supposedly friendly toward Defendants. In any case, the only portion of the article Heun and City of Naperville actually cite is a public statement given by Plaintiffs' lead counsel. (*See* Defs.' City of Naperville & Heun's Mem. in Support of Mot. to Dismiss at 3 n.2, Dkt. No. 31.) The Court will not impose sanctions based on the purported misconduct.

## II.     Fourth Amendment Claims

Turning to the merits, Plaintiffs contend that the Individual Defendants subjected Walgren to unreasonable conditions of confinement in violation of the Fourth Amendment by interrogating him in such a way as to cause extreme and intolerable psychological distress, which led him to take his own life. Relatedly, Plaintiffs contend that the Individual Defendants were deliberately indifferent to Walgren's objectively serious mental health needs that arose during his confinement.

As an initial matter, while Plaintiffs properly pleaded their conditions of confinement claim as arising under the Fourth Amendment, they mistakenly characterize their deliberate indifference claim as arising under the Fourteenth Amendment. Claims related to conditions of confinement are governed by different constitutional amendments and thus different legal standards depending on the individual's status within the criminal justice system. *See Edwards v. David*, No. 15-cv-9086, 2017 WL 2653077, at *3 (N.D. Ill. June 20, 2017). The Fourteenth Amendment applies to claims brought by pre-trial detainees who have had a judicial determination of probable cause. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). To the extent Walgren was under arrest (which the parties dispute), he had not yet received a judicial determination of probable cause, and thus the Fourth Amendment governs his claims. *Lopez v. City of Chi.*, 464 F.3d 711, 719 (7th Cir. 2006) ("[T]he Fourth Amendment governs the period of confinement between arrest without a warrant and the preliminary hearing at which a determination of probable cause is made . . . ." (internal quotation marks omitted)). The standard under the Fourth Amendment asks whether "an officer's conduct was objectively unreasonable under the circumstances." *Williams*, 509 F.3d at 403 (internal quotation marks omitted). The Fourth Amendment also governs the medical care claims of a warrantless arrestee who has not

had a probable cause determination. *See Ortiz v. City of Chicago*, 656 F.3d 523, 530 (7th Cir. 2011). Thus, the Court will construe Plaintiffs' medical care claim as arising under the Fourth Amendment.[2]

Defendants contend that Walgren cannot maintain a Fourth Amendment claim because there was no seizure. To state a Fourth Amendment claim based on either conditions of confinement or failure to provide medical care during confinement, a plaintiff must first allege that: (1) there was seizure and (2) the seizure was unreasonable. *Kernats v. O'Sullivan*, 35 F.3d 1171, 1177 (7th Cir. 1994); *Edwards*, 2017 WL 2653077, at *5. It is well-established that the Fourth Amendment applies to seizures of students in public schools. *See New Jersey v. T.L.O.*, 469 U.S. 325, 336 (1985); *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1013 (7th Cir. 1995). At the same time, "Fourth Amendment rights . . . are different in public schools than elsewhere." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995). While courts have made clear that for searches, reasonableness must be "evaluated in the context of the school environment, where restricting the liberty of students is a *sine qua non* of the educational process," *Wallace*, 68 F.3d at 1013–14, the Seventh Circuit has not definitively addressed whether the existence of a seizure is analyzed differently when it occurs in a public school. The Court need not address that issue here, however, as even assuming a seizure, the allegations in Plaintiffs' amended complaint do not establish that the Individual Defendants acted in an objectively unreasonable manner.

The Court first addresses whether Plaintiffs have alleged adequately that the Individual Defendants were objectively unreasonable in failing to recognize and provide adequate care for

---

[2] Plaintiffs put themselves at a disadvantage by framing their medical care claim as arising under the Fourteenth Amendment, as the Fourth Amendment's "objectively unreasonable" standard is more lenient than the Fourteenth Amendment's deliberate indifference standard. *Lopez*, 464 F.3d at 718.

the risk that Walgren would commit suicide. In determining whether a failure to provide medical care was objectively unreasonable, courts consider four factors: "(1) whether the officer has notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns." *Ortiz*, 656 F.3d at 530.

Plaintiffs' claim fails on the first factor, as the well-pleaded allegations in the complaint fail to indicate that any Individual Defendant had notice Walgren was even contemplating suicide. And "[w]ithout notice of [a detainee's] suicidal ideations," Plaintiffs cannot show that the Individual Defendants' "conduct was objectively unreasonable in failing to respond to [Walgren's] medical needs." *Saucedo v. City of Chi.*, No. 11 C 5868, 2015 WL 3643417, at *4 (N.D. Ill. June 11, 2015). Plaintiffs argue that the nature of the accusations leveled against Walgren supports a reasonable inference that Walgren was showing signs of suicide. But objective reasonableness is not "measured by whether an officer ***should*** have had notice of a medical condition, but whether an officer having ***actual*** notice of an arrestee's medical condition acted reasonably." *Id.* And nowhere in the amended complaint do Plaintiffs ever allege that any Individual Defendant had actual notice.

Moreover, inferring notice based solely on the nature of the accusations against Walgren suggests that notice could be imputed to any law enforcement officer who accuses an individual of committing a sex offense or potentially any other serious offense. The Court cannot accept that the scope of notice stretches so broadly. Indeed, the Seventh Circuit has held that "strange behavior alone, without indications that that behavior has a substantial likelihood of taking a suicidal turn, is not sufficient to impute subjective knowledge of a high suicide risk" to state officials. *Cavalieri v. Shepard*, 321 F.3d 616, 621 (7th Cir. 2003) (internal quotation marks

omitted). Here, Plaintiffs do not even allege that Walgren was behaving strangely. Moreover, by Plaintiffs' own account, Walgren was a model student with no history of mental health issues. *Cf. Saucedo*, 2015 WL 3643417, at *5 (rejecting a presumption that "officers are automatically placed on notice of an arrestee's risk of suicide simply because of the arrestee's status as an incarcerated person, whether or not the arrestee actually has suicidal ideations"). The amended complaint is devoid of allegations about Walgren's history or behavior during the interrogation that would lead any Individual Defendant to reasonably believe that he posed a danger to himself. Thus, Plaintiffs have not stated a Fourth Amendment claim for failure to provide medical care.

As to Plaintiffs' conditions of confinement claim, the Individual Defendants' lack of actual notice of Walgren's serious medical needs is a factor in the analysis, but it is not determinative. *See Alcorn v. City of Chi.*, No. 17 C 5859, 2018 WL 3614010, at *13 (N.D. Ill. July 27, 2018). Rather, Plaintiffs need only plausibly allege that the totality of the Individual Defendants' "conduct in detaining the arrestee was 'objectively unreasonable' under the circumstances." *Flores v. Lackage*, 938 F. Supp. 2d 759, 775 (N.D. Ill. 2013). In determining whether conditions of confinement are objectively unreasonable, "reliance upon common sense is particularly appropriate." *Lopez*, 464 F.3d at 720. The Court's common-sense conclusion here is that while the Individual Defendants' conduct was problematic and had tragic consequences, the amended complaint alleges no conditions of confinement that exceeded the bounds of an ordinary interrogation. *Cf. Dassey v. Dittman*, 877 F.3d 297, 304 (7th Cir. 2017) ("[T]he [Supreme] Court has held that officers may deceive suspects through appeals to a suspect's conscience, by posing as a false friend, and by other means of trickery and bluff.").

Plaintiffs argue that the Individual Defendants made shocking false and coercive threats against Walgren, such as that he would face the severe consequence of having to register as a sex

offender. However, as a general matter, absent physical force "the tactics police use to interrogate a suspect [do not] subject them to civil liability" under the Fourth Amendment, even where they resort to "conniving and manipulating trickery." *Foster v. Gigli*, No. 1:10-CV-0049 RM, 2010 WL 1266307, at *3 (N.D. Ind. Mar. 25, 2010).

Plaintiffs do not allege that the physical conditions of Walgren's confinement were objectively unreasonable. Rather, their claim is predicated entirely on the threats and accusations made by the Individual Defendants during the interrogation.[3] But caselaw in this Circuit suggests that a conditions of confinement claim must be tied, at least in part, to the physical conditions of the suspect's detention. For example, in *Lopez v. City of Chicago*, the Seventh Circuit held that the plaintiff was entitled to a jury trial as he had "presented evidence that he was deprived of food, drink, and sleep during the four days and nights he spent shackled to the wall of the interrogation room." *Lopez*, 464 F.3d at 720. Similarly, in *Edwards v. David*, the detainee was handcuffed in a squad car but not secured by a seatbelt as the defendant officer drove recklessly through a construction zone. *Edwards*, 2017 WL 2653077, at *5. And in *Flores v. Lackage*, the detainee was not provided with bedding for seven hours and forced to sleep on a concrete floor. *Flores*, 938 F. Supp. 2d at 778. By contrast, here, Plaintiffs allege no physical deprivations or physical force used against Walgren, the interrogation itself was of a relatively brief duration, and the Individual Defendants suspected Walgren of engaging in criminal misconduct. *See Alcorn*, 2018

---

[3] Plaintiffs also make much of the fact that Walgren's parents were not contacted before the interrogation and he was not provided with *Miranda* warnings. However, such allegations are irrelevant to the conditions of confinement analysis. Even if the Individual Defendants did run afoul of state and federal laws mandating that they take such actions, their failure to do so would only affect the admissibility of any statements Walgren gave to the Individual Defendants. *See Foster*, 2010 WL 1266307, at *3 ("[A]s with the question of whether officers gave a suspect appropriate *Miranda* warnings, the tactics police used to interrogate a suspect doesn't subject them to civil liability—though inappropriate tactics might render a suspect's statement inadmissible at trial."); *People v. Clements*, 482 N.E.2d 675, 680 (Ill. App. Ct. 1985) ("[V]iolation of the statute [requiring notification of a juvenile detainee's parents] is a factor to be considered in determining the voluntariness of the confession.").

WL 3614010, at *13 ("In assessing [the objective reasonableness] of a defendant's conduct, courts consider several factors, including the duration of confinement, the nature and seriousness of the alleged constitutional violation, and the police rationale for the alleged deprivation of an arrestee's rights." (internal quotation marks omitted)). While the Court declines to conclude that a conditions of confinement claim cannot be based solely on egregious psychological conditions, the Court cannot conclude that the Individual Defendants' conduct suffices.

Thus, the Court finds that Plaintiffs have failed to state a Fourth Amendment claim for either failure to provide medical care or objectively unreasonable conditions of confinement. Because Plaintiffs have failed to allege the underlying constitutional violation adequately, they likewise cannot proceed on the corresponding *Monell* claims against the Municipal Defendants. *Carr v. City of N. Chi.*, 908 F. Supp. 2d 926, 929 (N.D. Ill. 2012) ("Where a plaintiff brings a *Monell* claim against a municipality based on the specific conduct of a municipality employee, the plaintiff cannot prevail on that *Monell* claim without first showing that the employee violated the plaintiff's constitutional rights.").

The Court's determination that the Individual Defendants' actions, as pleaded, are not objectively unreasonable for purposes of a Fourth Amendment analysis should not be understood as an endorsement of those actions by this Court. Registration as a sex offender entails severe restrictions on a sex offender's liberty. For example, a sex offender is limited from holding certain jobs and must stay a certain distance away from places where children are present. *See People v. Pollard*, 54 N.E.3d 234, 239–42 (Ill. App. Ct. 2016). Moreover, the offender's status and crime of conviction are made publicly available, *Smith v. Doe*, 538 U.S. 84, 91 (2003), thereby subjecting the offender to stigma and ostracization. And in Illinois, a juvenile convicted on charges related to child pornography could potentially be forced to remain a registered sex offender for the rest of

his or her life. *See* 730 ILCS 150/2, 3-5, 7; *In re J.W.*, 787 N.E.2d 747, 756 (Ill. 2003). Faced with the implied threat of such consequences, it is perhaps unsurprising that a previously well-adjusted teenager's emotional state could deteriorate to such a point that he would contemplate taking his life. Nonetheless, these events as currently pleaded do not plausibly allege the constitutional violations asserted by Plaintiffs.

### III.    Fourteenth Amendment Claims

In addition to the medical care claim that the Court has construed as arising under the Fourth Amendment, Plaintiffs set forth three Fourteenth Amendment claims against the Individual Defendants. Each claim is rooted in the substantive component of the due process clause. Plaintiffs also seek to hold the Municipal Defendants liable for the Individual Defendants' Fourteenth Amendment violations under a *Monell* theory.

### A.    Conscience-Shocking Coercive Interrogation

Based on the same conduct as their Fourth Amendment conditions of confinement claim, Plaintiffs seek to hold the Individual Defendants' liable under the Fourteenth Amendment for what they describe as conscience-shocking coercive interrogation tactics. As the Court has already dismissed this claim when styled as one under the Fourth Amendment, Plaintiffs' Fourteenth Amendment version of the claim likely fails as well, as a plaintiff "cannot use a substantive due process claim to circumvent the standards appropriate under the Fourth Amendment if his claim is 'covered by' the Fourth Amendment." *Tesch v. Cty. of Green Lake*, 157 F.3d 465, 471 (7th Cir. 1998). Nonetheless, because there is some question as to whether the Fourth Amendment applies to non-physical conditions of confinement, the Court will proceed to analyze Plaintiffs' Fourteenth Amendment claim for conscience-shocking coercive interrogation on the merits.

An individual may sue under § 1983 for law enforcement's use of "conscience-shocking interrogation tactics." *Cairel v. Alderden*, 821 F.3d 823, 833 (7th Cir. 2016). There is no clear standard for what tactics shock the conscience, but "the ultimate question is whether the conduct is 'too close to the rack and the screw.'" *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)); *see also Hurt v. Wise*, 880 F.3d 831, 844 (7th Cir. 2018) ("The bar for 'conscience-shocking' is very high."). "[T]he official conduct most likely to rise to the conscience shocking level is the conduct intended to injure in some way unjustifiable by any government interest." *Cairel*, 821 F.3d at 833 (internal quotation marks omitted).

Here, Plaintiffs' allegations do not indicate that the Individual Defendants' actions were unjustified by any government interest. Indeed, Plaintiffs concede that the Individual Defendants were investigating whether Walgren had "engaged in criminal misconduct." (Am. Compl. ¶ 14.) Thus, their tactics were justified by a government interest. Moreover, the Seventh Circuit has made clear that "[l]ying to, threatening, or insulting a suspect does not shock the conscience." *Cairel*, 821 F.3d 823, 833 (7th Cir. 2016). And because lies and threats are the entirety of the acts that Plaintiffs contend were conscience shocking here, their allegations fall well short of stating a claim.

The Court's conclusion is not affected by the fact that Walgren was a juvenile. Plaintiffs cite dicta in one district court case within this Circuit for the proposition that "[s]tandard interrogation tactics used on a child could shock the conscience." *Outlaw v. City of Cahokia*, No. 16-cv-456-JPG-SCW, 2017 WL 1496251, at *5 (S.D. Ill. Apr. 26, 2017). They further cite a district court opinion from outside this Circuit where an eleven-year-old student successfully stated a claim for conscience shocking interrogation based on ordinary interrogation tactics. *See Grendell v. Gillway*, 974 F. Supp. 46 (D. Me. 1997). But the interrogation in *Grendell* is hardly

comparable, as the child was far younger than the nearly seventeen-year-old Walgren. Moreover, the child in *Grendell* was being questioned about her parents' suspected crimes rather than her own; what the Court found "contemptible" was the "lying to and threatening of an eleven year old girl by the police in order to force her to incriminate her parents." *Id.* at 51. By contrast, in *Jain v. Butler School District 53*, 303 F. Supp. 3d 672, 683 (N.D. Ill. 2018), the Court found that the intimidating and belittling interrogation of a nine-year-old did not shock the conscience.[4]

While the Individual Defendants' may have "exercised questionable judgment" in the way they went about questioning Walgren, the Court cannot conclude that their actions shock the conscience. *Tun v. Whitticker*, 398 F.3d 899, 904 (7th Cir. 2005). Therefore, Plaintiffs' claim against the Individual Defendants is dismissed along with the separate *Monell* claim against the Municipal Defendants.

### B.      State-Created Danger

Next, Plaintiffs contend that the Individual Defendants intentionally created Walgren's dire psychological state with their interrogation tactics, thus exposing him to a risk of harm. Generally, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). However, the Seventh Circuit has recognized that "people propelled into danger by public employees have a good claim under the Constitution." *Paine v. Cason*, 678 F.3d 500, 510 (7th Cir. 2012). For there to be liability, a state official must have, by

---

[4] The Court in *Jain* did find that the plaintiff stated a claim for unreasonable seizure. However, the circumstances there are distinguishable with respect to the Court's Fourth Amendment analysis of Plaintiffs' claim in this case. First, *Jain* involved a far younger child. Moreover, that child was accused merely of academic dishonesty, which the Court found "did not involve disruptive behavior or the need to restore order among students . . . or other exigent circumstances." *Jain*, 303 F. Supp. 3d at 682. On the other hand, the Individual Defendants were investigating allegations of criminal misconduct, which of course justifies more aggressive action. *See Tun v. Whitticker*, 398 F.3d 899, 904 (7th Cir. 2005) (listing "assaultive behavior, porno peddling, drug selling, [and] gun-toting" among "serious matters that can cause real problems in a high school").

his or her own affirmative acts, created or increased a danger to the individual, and the official's failure to protect an individual from the state-created danger "must be the proximate cause of the injury to the individual." *King ex rel. King v. E. St. Louis Sch. Dist. 189*, 496 F.3d 812, 818 (7th Cir. 2007). Plaintiffs must also show that the official's failure to protect shocks the conscience. *Id.*

In *Martin v. Shawano-Gresham School District*, 295 F.3d 701 (7th Cir. 2002), the Seventh Circuit addressed a situation in which the plaintiffs alleged that a school's decision to suspend their daughter caused her severe emotional distress, yet the school let her go home by herself where she ended up committing suicide. The court concluded that "the school did not create or increase a risk to [the student] by suspending her from school, even if that action caused severe emotional distress." *Id.* at 710. And it noted that the state does not create or increase the risk of suicide by arresting and detaining an individual, even where the arrest causes severe emotional distress. *Id.* at 709–10. Even assuming that Walgren was under arrest during the interrogation, it is difficult to see how the additional fact that the Individual Defendants threatened Walgren with registration as a sex offender would require a different result than in *Martin*.

On the other hand, Plaintiffs bring to this Court's attention two instances where courts found that state officials could potentially be liable for acts that led to a juvenile's suicide. In *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253 (10th Cir. 1998), a special education student was suspended. Despite both the school's principal and a counselor knowing that the student was a risk for committing violence, the principal sent him home during the school day even though his parents were not present. *Id.* at 1256–57. When his parents arrived home, they found the student dead of a self-inflicted gunshot wound. *Id.* at 1257. The Tenth Circuit affirmed the district court's denial of summary judgment in favor of the principal and counselor on the state-created danger claim. *Id.* at 1262–64. Yet the facts in *Armijo* are far different from those

here, as Walgren was an honor-roll student with no disciplinary record or history of violence or self-harm. Moreover, as the Seventh Circuit explained in *Martin*, the *Armijo* court "concluded that the school created a risk that otherwise did not exist by removing [the student] from the school during school hours, driving him home, and then leaving him there alone in the middle of the school day." *Martin*, 295 F.3d at 711. "In that case, it was not the suspension that created a risk to the child, but the school's affirmative act of taking the student home alone during the middle of the school day" where at least some defendants knew that he had access to weapons. *Id.* There was a plausible argument that such acts shock the conscience. By contrast, the Individual Defendants' affirmative act of placing a severely emotionally distressed Walgren alone in an office at the school to wait for his mother's arrival may have been ill-advised, but it does not shock the conscience. *Cf. Hasenfus v. LaJeunesse*, 175 F.3d 68 (1st Cir. 1999) (affirming dismissal of state-created danger claim brought by the parents of a fourteen-year-old who was reprimanded by a teacher who knew or should have known that she had suffered recent trauma and then sent the student unsupervised into a locker room where she attempted to hang herself). This is particularly true where Plaintiffs do not allege that there was anything in the office such as a weapon or other object that an emotionally-distressed teenager might use on an impulse to harm himself.

The other case relied on by Plaintiffs is *Sloane v. Kanawha County Sheriff Department*, 342 F. Supp. 2d 545 (S.D. W. Va. 2004). There, the court found that the grandparents of a seventeen-year old had stated a claim for state-created danger where the minor had been interrogated by police outside the presence of his grandparents three separate times over a ten-day period about a date-rape accusation. *Id.* at 547–553 Following the final interrogation, the defendants took the minor home, where he took his own life. That case is somewhat close to the

facts here, as the defendants made serious accusations against the minor, told him he was a rapist who was a danger to reoffend, and implicitly threatened him with being charged with a crime and losing his freedom. *Id.* at 548. Nonetheless, it is distinguishable primarily because the defendants knew that the minor was emotionally troubled, and at least one of the defendants recognized the effect of the interrogation on the minor's psyche when he expressed concern that the minor may become suicidal but continued interrogating him anyway. *Id.* at 548, 550, 552. Furthermore, unlike here, where Walgren was interrogated only once, the minor in *Sloane* was interrogated three times and was even subject to a polygraph test during one interrogation. *Id.* at 548.

In the end, there is no reason to believe that the Seventh Circuit would find two out-of-circuit cases persuasive here. *Cf. Hasenfus*, 175 F.3d at 74 ("If sound, [*Armijo*] is at the outer limit . . . ."). And because the ruling in *Martin* is far more analogous to the facts here than *Armijo* and *Sloane*, the Court cannot find that Plaintiffs have adequately stated a state-created danger substantive due process claim against the Individual Defendants. It necessarily follows that Plaintiffs cannot maintain a *Monell* claim against the Municipal Defendants.

### C.      Interference with Parent-Child Relationship

The last substantive due process claim brought by Plaintiffs is for intentional interference with the parent-child relationship. Under the Fourteenth Amendment, the state may not violate a parent's fundamental right "to make decisions concerning the care, custody, and control of [his or her] children." *Troxel v. Granville*, 530 U.S. 57, 66 (2000) (plurality opinion). While the Seventh Circuit has stated that "the appropriate framework for analyzing claims alleging a violation of this interest is less than clear," it has held that "[u]nder any standard, finding a constitutional violation based on official actions that were not directed at the parent-child relationship would stretch the concept of due process far beyond the guiding principles set forth by the Supreme Court." *Russ v.*

*Watts*, 414 F.3d 783, 789–90 (7th Cir. 2005). Thus, to state a claim, Plaintiffs must allege facts indicating that the Individual Defendants' actions were specifically aimed at interfering with the parent-child relationship. *Gregory v. City of Evanston*, No. 06 C 4093, 2006 WL 3718044, at *3 (N.D. Ill. Dec. 15, 2006).

Here, it is clear the Individual Defendants did not specifically aim their actions at Walgren's relationship with his parents. Rather, their actions were aimed at uncovering whether Walgren had engaged in criminal misconduct. There is no evidence that the Individual Defendants specifically intended to separate Walgren from his parents. *Compare with Gregory*, 2006 WL 3718044, at *4 (finding a cognizable claim of interference with parent-child relationship where police denied parents access to their detained children unless the parents signed certain documents). Any interference was merely "an incidental result of state action." *Russ*, 414 F.3d at 791. Any purported intent to separate Walgren from his parents is belied by the fact that at the conclusion of their interrogation, the Individual Defendants promptly called Walgren's mother.

Plaintiffs contend that the separation was of a constitutional magnitude because the Individual Defendants failed to adhere to Illinois law requiring parental notification before a warrantless seizure. While the relevant statute, 705 ILCS 405/5-405, does require an officer making a warrantless arrest of a minor to "immediately make a reasonable attempt to notify the parent," there is nothing therein that prohibits the officer from questioning the minor before the parent's arrival. *Cf. In re G.O.*, 727 N.E.2d 1003, 1013 (Ill. 2000) ("[A] juvenile's confession should not be suppressed simply because he was denied the opportunity to confer with a parent or other concerned adult before or during the interrogation."). Even if Walgren was subject to a custodial interrogation and the Individual Defendants' failure to immediately notify his parents of his arrest violated state law, that failure still would not amount to a constitutional violation. *See*

*Windle v. City of Marion, Ind.*, 321 F.3d 658, 662 (7th Cir. 2003) ("State law violations do not form the basis for imposing § 1983 liability."); *cf. Hardaway v. Young*, 302 F.3d 757, 765 (7th Cir. 2002) ("Neither federal statutory nor constitutional law requires that a juvenile's parents be notified prior to obtaining a confession." (internal quotation marks omitted)). Thus, Plaintiffs' familial relations claim against the Individual Defendants and the related *Monell* claim against the Municipal Defendants are dismissed.

IV.    **State Law Claims**

Finally, Plaintiffs set forth state law claims against the Individual Defendants for willful and wanton conduct and intentional infliction of emotional distress. In addition, they seek to hold the Municipal Defendants liable for both torts under the doctrine of *respondeat superior*.

A.    **Willful and Wanton Conduct**

Illinois common law does not have a "separate and independent tort of willful and wanton misconduct." *Sparks v. Starks*, 856 N.E.2d 575, 578 (Ill. App. Ct. 2006). Instead, "[w]illful and wanton misconduct is essentially an aggravated form of negligence, regarded as a hybrid between conduct considered negligent and conduct considered intentionally tortious." *Id.* at 577. Thus, Plaintiffs must "establish the same basic elements of a negligence claim, which are the existence of a duty, breach of that duty, and an injury proximately resulting from the breach." *Doe-2 v. McLean Cty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2010). They must further show that the breach was not merely negligent but committed with "conscious disregard for the welfare of the plaintiff." *Id.* (internal quotation marks omitted). Plaintiffs must plead willful and wanton conduct instead of simple negligence because under the Illinois Local Governmental and Governmental Employees Tort Immunity Act, a "public employee is not liable for his act or

omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct." 745 ILCS 10/2-202.

Courts have held that there is no meaningful difference between "willful and wanton" and "deliberate indifference" as used in federal constitutional law. *See Chapman v. Keltner*, 241 F.3d 842, 847 (7th Cir. 2001) ("We have found that the standard for assessing whether conduct is willful and wanton is remarkably similar to the deliberate indifference standard." (internal quotation marks omitted)). Accordingly, Plaintiffs rely entirely on their arguments in support of their constitutional claims to defeat dismissal of their willful and wanton conduct claim. And because Plaintiffs' constitutional claims fail, so must their willful and wanton conduct claims.[5]

### B.     Intentional Infliction of Emotional Distress

In Illinois, to state a claim for intentional infliction of emotional distress, a plaintiff must show: (1) the conduct involved was truly extreme and outrageous; (2) the actor intended his conduct to inflict severe emotional distress, or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct must actually cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). However, extreme and outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id.* Rather, the conduct "must be so extreme as to go beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80–81 (Ill. 2003).

---

[5] The Court recognizes that it analyzed the deliberate indifference to medical needs claim under the Fourth Amendment's more lenient "objectively unreasonable" standard. But it necessarily follows that conduct that is not objectively unreasonable falls short of deliberate indifference. *See Williams*, 509 F.3d at 403 ("[W]e do note that the deliberate indifference standard under the Eighth and Fourteenth Amendments requires a higher showing on a plaintiff's part than is necessary to prove an officer's conduct was 'objectively unreasonable under the circumstances.'")

It is clear from Plaintiffs' allegations that Walgren did in fact suffer severe emotional distress as a result of the Individual Defendants' interrogation tactics. Moreover, the Individual Defendants likely should have known that threatening a teenager with the severe consequences attendant with child pornography possession would cause severe emotional distress. Thus, the key issue is whether the Individual Defendants' conduct was extreme and outrageous. In undertaking the assessment, the Court recognizes that "the degree of power or authority which a defendant has over a plaintiff can impact upon whether the defendant's conduct is outrageous." *McGrath v. Fahey*, 533 N.E.2d at 809. Here, the Individual Defendants were a police officer and two school authorities, both paradigmatic examples of "individuals who may be positioned to exercise power or authority over a plaintiff." *Id.* at 809–10. Nonetheless, police officers[6] "are entitled to perform their law enforcement responsibilities assertively." *Cairel*, 821 F.3d at 836. A police officer's position of power is a problem in the intentional infliction of emotional distress analysis only when his "actions were far out of bounds for an interrogation of a lawfully arrested suspect." *Id.* As discussed above, while the Individual Defendants' interrogation tactics were harsh and aggressive, they were nonetheless ordinary police interrogation tactics. And where an "interrogation[] did not depart from reasonable and ordinary police practices" it cannot "be said to be beyond all bounds of decency as required for outrageous and extreme conduct under Illinois law." *Id.* (internal quotation marks omitted). Thus, Plaintiffs' intentional infliction of emotional distress claims are dismissed.

---

[6] The fact that Madden and Konrad were school authorities rather than police officers is immaterial to the analysis. Based on the assumption throughout this entire opinion that Walgren was in fact in custody, Madden and Konrad were assisting a police officer, Heun, in the execution of his duties, and therefore it is appropriate to treat them the same.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss (Dkt. Nos. 30, 35) are granted as to all claims. Plaintiffs' first amended complaint is dismissed without prejudice. Plaintiffs are granted leave to file a second amended complaint that remedies the pleading deficiencies discussed herein, if they are able to do so consistent with the requirements of Federal Rule of Civil Procedure 11.

ENTERED:

Dated: January 17, 2019

Andrea R. Wood
United States District Judge